IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 3:16-CV-139-FL

| | | |
|---|---|---|
| CEEGEE SHANIKUA RICHARDSON, | ) ) ) | |
| Plaintiff, | ) ) ) | ORDER |
| v. | ) ) | |
| CELLCO PARTNERSHIP, d/b/a VERIZON WIRELESS, | ) ) ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion, made pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2–4, to compel arbitration and dismiss the case or, alternatively, stay proceedings pending arbitration of issues so arbitrable. (DE 18). The motion has been fully briefed and the issues raised and are ripe for ruling. For the reasons that follow, defendant's motion is granted on the terms set forth herein.

## BACKGROUND

Plaintiff initiated this action June 8, 2016, alleging that defendant, a cellular telephone service provider, engaged in unlawful debt collection practices in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(a)(2), and the North Carolina Debt Collection Act, N.C. Gen. Stat. § 75–51.

Defendant filed the instant motion October 4, 2016, arguing that the contract that serves as the basis for the parties' relationship mandates arbitration. Accordingly defendant seeks an order directing the parties to arbitrate per the agreement and dismissal or stay of pending litigation. In

support of the motion, defendant relies upon the pleadings and the declaration of Nicole Reyes, a senior analyst employed by defendant, to which declaration is appended copies of agreement executed by the parties and copy of defendant's customer agreement.

Plaintiff opposes the motion on grounds that defendant's actions giving rise to complaint are outside the subject matter of the arbitration clause and, in addition, where contractual relationship between the parties previously was cancelled, the arbitration agreement is no longer in effect. In opposition to the motion, plaintiff relies also upon the pleadings, and, in addition, a series of e-mails defendant sent to plaintiff pertaining to plaintiff's account.

## STATEMENT OF FACTS

The facts viewed in the light most favorable to plaintiff may be summarized as follows: Plaintiff is a citizen of Columbus County, North Carolina. (DE 1 ¶ 4). Defendant, a Delaware corporation, is engaged in the businesses of cellular telephone service and debt collection in North Carolina. (DE 8 ¶ 7). In April or May 2015, plaintiff and defendant entered into a contract whereby plaintiff added two cellular telephones to her preexisting account with defendant. (DE 8 ¶ 13). As part of this contract, plaintiff agreed to the terms of defendant's customer agreement, and both parties agreed to arbitrate disputes. (DE 20-1 at 5 & 7). Regarding arbitration, the customer agreement provides, in relevant part:

> [Plaintiff] and [defendant] both <u>agree to resolve disputes only by arbitration</u> or in small claims court. [Plaintiff] understand[s] that by this agreement [plaintiff is] giving up the right to bring a claim in court or in front of a jury. . . . [Plaintiff and defendant] also both agree that:
>
> (1) The Federal Arbitration Act Applies to this agreement . . . . <u>Any dispute that in any way relates to or arises out of this agreement</u> or from any equipment, products and services [plaintiff] receive[s] from us . . . <u>will be resolved by one or more neutral arbitrators</u> . . .

(DE 20-1 at 13) (capitalization omitted) (emphasis added).

Plaintiff alleges that, around the time she initially purchased the phones, defendant's employee gave assurance that cellular network coverage existed in the area plaintiff wanted to use the phones. (DE 1 ¶ 14). However, when plaintiff attempted to use the phones, she learned that service was not available in the relevant area. (DE 1 ¶ 15). Following this discovery, plaintiff alleges she immediately called defendant in an attempt to return the phones or, alternatively, to seek other resolution of the problem. (Id. ¶¶ 16–18). Plaintiff alleges that after defendant sent a service representative to the area where plaintiff intended to use the phones, defendant determined that service was unavailable, and, in May 2015, the parties agreed to cancel the contract. (Id. ¶¶ 19–20). As part of said cancellation, defendant advised plaintiff by e-mail June 29, 2017, that she would be permitted to keep her phones. (DE 1-3).

On August 26, 2015, plaintiff received a bill from defendant in the amount of $1,405.96 pertaining to an alleged outstanding balance. (DE 1-4). Plaintiff alleges she did not owe any money to defendant and that she called defendant several times to dispute the charge. (Id. ¶¶ 25 & 31). Nonetheless, plaintiff alleges defendant or its agent began to call plaintiff up to three times per day to collect alleged debt. (Id. ¶ 31). Plaintiff further alleges that, as part of its collection efforts, defendant used automated telephonic dialing systems to contact plaintiff, but defendant lacked plaintiff's permission to use such automated services. (Id. ¶¶ 32–33). In addition, plaintiff alleges she explained to the callers that they did not have permission to call plaintiff's cellular phone. (Id. ¶ 34).

Plaintiff alleges that in December 2015, she called defendant in response to a letter wherein defendant threatened to damage plaintiff's credit if she did not pay the debt, (id. ¶ 36), and

3

defendant's agent, upon review of plaintiff's account, acknowledged that e-mails from defendant in plaintiff's possession demonstrated that plaintiff did not owe the debt and stated that a supervisor would correct the problem. (Id. ¶ 37). In January, 2016, plaintiff alleges she received a collection letter dated December 31, 2015, from non-party North Shore who was collecting the alleged debt for defendant. (Id. ¶ 40). Plaintiff alleges that when she again called defendant about the collection letter, defendant's agent stated that plaintiff's account could not be changed. (Id. ¶¶ 41–44). This action followed.

## COURT'S DISCUSSION

A.Standard of Review

A motion to compel arbitration is akin to a motion for summary judgment. See Chorley Enters. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 563–64 (4th Cir. 2015). Therefore, such motions should be granted where an examination of the pleadings, affidavits, and other discovery materials properly before the court demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party). Where a genuine dispute as to one or more material facts exists, however, the FAA requires a jury trial. Chorley, 807 F.3d at 563–64.

The party seeking to compel arbitration "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then

4

"set forth specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S.654, 655 (1962).

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "a reasonable jury could reach only one conclusion based on the evidence," or when "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.     Analysis

Section 2 of the FAA provides "A written provision in . . . a contract evidencing a transaction in commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA, under which defendant makes its motion, states that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration . . . [to] petition any United States district court

5

which, save for such agreement, would have jurisdiction . . . for an order [compelling arbitration as provided for in the agreement]." 9 U.S.C. § 4. Section 2 represents the "primary substantive provision of the Act," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 560 U.S. 1, 24 (1983), while § 4 merely is a "procedure[] by which federal courts implement § 2's substantive rule." Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68 (2010).

When faced with a motion to compel arbitration, the court analyzes only two gateway issues. See Howsam v. Dean Witter Reyonlds, Inc., 537 U.S. 79, 83–84 (2006). First, the court must determine whether "a valid agreement to arbitrate exists between the parties." Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999). This inquiry is not confined to defects in contract formation, but includes also "such grounds as exist at law or in equity for the revocation of any contract." Id. (quoting 9 U.S.C. § 2); see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 627 (1985). Where the court concludes there is a contract, the court next asks whether "the specific dispute falls within the substantive scope of that agreement." Id.

An agreement to arbitrate any dispute "arising out of or related to" an underlying agreement constitutes a broad arbitration agreement to be given "expansive reach." American Recovery Corp. V. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93 (4th Cir. 1996). Such language "does not limit arbitration to the literal interpretation or performance of the contract, but embraces every dispute between the parties having a significant relationship to the contract regardless of the label added to the dispute." Id. (quoting J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 321 (4th Cir. 1988) (alterations omitted). Additionally, parties "failure to exclude from arbitrability contract disputes arising after termination, far from manifesting an intent to have arbitration obligations cease with the agreement, affords a basis for conclusion that they intended to arbitrate

6

all grievances arising out the contractual relationship." Nolde Bros., Inc. v. Local No. 358, Bakery and Confectionery and Workers Union, AFL-CIO, 430 U.S. 243, 255 (1977).

Based upon the foregoing rules, the arbitration agreement at bar is enforceable. First, the parties do not dispute that the contracts in issue were valid when formed and are not otherwise subject to revocation. Second, where the arbitration agreement stated in defendant's customer agreement and incorporated by reference in contracts signed by plaintiff memorializes the parties' agreement to arbitrate "any dispute that in any way relates to or arises out of th[e] agreement[,]" (DE 21-1 at 13), the provision must given "expansive reach" such that any dispute between the parties having significant relationship to the agreement is arbitrable. See American Recovery, 96 F.3d at 93. Accordingly, where plaintiff's claims of unfair debt collection practices pertain to alleged debts arising out of transactions undertaken pursuant to the contracts in issue here, said claims have a significant relationship to the parties' contracts. See id. Therefore, plaintiff's claims fall within the scope of the arbitration agreement. See id.

In support of a contrary argument, plaintiff contends that the arbitration agreement does not apply to her claims because defendant agreed to cancel the contract after it became apparent that defendant could not cause plaintiff's phones to operate properly. However, plaintiff's argument is foreclosed by the Supreme Court's pronouncement in Nolde Bros. that if parties prefer to have agreement to arbitrate dissolve upon termination of a contract, it is incumbent upon the parties to make that intention express. See 430 U.S. at 255. No such express intention is shown by agreement here. Accordingly, even assuming defendant agreed to terminate its contractual relationship with plaintiff, such termination does not vitiate agreement to arbitrate disputes arising out of same contractual relationship. See id. Accordingly, plaintiff's argument fails.

7

In sum, where the evidence of record demonstrates validity of agreement to arbitrate incorporated into contracts from which plaintiff's claims arise, order directing arbitration is proper. Additionally, where the parties have identified no dispute not within the scope of agreement to arbitration, dismissal is proper. Choice Hotels Int'l, Inc. V. BSR Tropicana Resort, Inc., 252 F.3d 707, 709–10 (4th Cir. 2001) ("[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."). Accordingly, the case must be dismissed.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss and compel arbitration (DE 18) is GRANTED. This matter is DISMISSED, and the court dispenses with the parties' obligations under this court's amended case management order (DE 27). The clerk is DIRECTED to close this case.

SO ORDERED, this the 8th day of May, 2017.

LOUISE W. FLANAGAN
United States District Judge